***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Kemper Insurance Company/Lumberman's Mutual Insurance Company was the workers' compensation carrier on the risk at all relevant times herein.
3. The employee-employer relationship existed between plaintiff and defendant-employer on or about March 27, 1998 and July 5, 2000.
4. Plaintiff suffered a compensable injury by accident to her right arm as a result of the March 27, 1998 accident, which allegedly was reinjured in a second accident on July 5, 2000.
4. Defendants have paid disability benefits to plaintiff as a result of the March 27, 1998 injury from December 6, 2000 to March 29, 2001 at the rate of $269.10.
5. The parties agree that plaintiff was paid at an inappropriate compensation rate and a check was presented to her at the Deputy Commissioner hearing to make up the difference between the compensation paid to her at the rate of $269.10 and the correct rate of $314.26.
6. The parties stipulate that plaintiff's average weekly wage is $471.37, yielding a compensation rate of $314.26.
7. Plaintiff suffered an additional injury on July 5, 2000. The extent of that injury will be determined based upon the testimony at the hearing.
8. Medical records were introduced into evidence by the parties and accepted as Stipulated Exhibit 1.
9. The issues before the Commission are as follows: a) whether plaintiff is entitled to additional disability benefits; b) whether plaintiff is entitled to retraining in order to obtain employment; and c) whether plaintiff is entitled to additional medical treatment and/or an independent medical evaluation.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner hearing, plaintiff was 43 years old. She completed the tenth grade in school but obtained a GED thereafter. She also completed one year of college.
2. Plaintiff began working at Burger King in 1982 and worked there on and off, primarily in Florida. She began to work on a full-time basis for Burger King at the Yadkinville restaurant in 1995 and continued to work there until April of 2001. Plaintiff's last job position was that of a Senior Assistant Manager.
3. On March 27, 1998, plaintiff was walking toward the front of the store when she slipped and fell in debris on the floor. She tried to catch herself, but she still sustained injuries to both arms and knees. This claim was accepted as compensable by the carrier.
4. On January 21, 1998, plaintiff suffered an injury to her right wrist while lifting and turning a fry basket. Defendants denied that claim on the grounds that plaintiff did not suffer an injury by accident and the claim was not pursued further.
5. Prior to the compensable injury by accident on March 27, 1998, plaintiff was also involved in two automobile accidents in which she injured her neck and back. She also slipped and fell at her apartment complex sometime in the 1990s. Plaintiff settled all of those claims for injuries she received in those respective accidents.
6. Plaintiff was first treated for her work-related injury of March 27, 1998 on April 1, 1998 by Surry Orthopedics. Plaintiff was diagnosed with a right wrist sprain and bilateral knee contusions. She was given a work note to continue work with no restrictions.
7. Plaintiff continued her treatment at Surry Orthopedics and by June 1, 1998, her knee complaints were noted to have improved. Throughout this time, she also continued to work at her regular job.
8. On August 19, 1998, plaintiff was again seen at Surry Orthopedics complaining of right wrist and knee pain and advising the doctor that her wrist was swollen. The doctor requested that she call him the next time her wrist was swollen so that he could observe it. There is no medical record indicating that any physician at Surry Orthopedics was ever able to observe swelling in plaintiff's right wrist.
9. Plaintiff's last treatment at Surry Orthopedics occurred on September 24, 1998. At that time, plaintiff had a nerve pace test of her right wrist performed which was negative. The doctor also noted that plaintiff's bilateral knee contusions were now asymptomatic. Plaintiff had full range of motion in her wrist and the physician described her continued wrist complaints as being atypical. Plaintiff was allowed to continue to work full duty.
10. Plaintiff next saw Dr. Andrew Koman at North Carolina Baptist Hospital on December 16, 1998 due to continued complaints in her right wrist. Dr. Koman's assessment on that date related solely to plaintiff's wrist. Dr. Koman recommended a bone scan. Although advising Dr. Koman that she had injured her knee when she fell originally, plaintiff made no complaints to Dr. Koman about any continued knee pain.
11. After plaintiff's first visit with Dr. Koman, she moved to Florida. While in Florida, she saw Dr. Umesh Raturi. Plaintiff complained to Dr. Raturi of pain in the right wrist and swelling in the right forearm. Plaintiff also told Dr. Raturi that her knees were better. A bone scan was ordered and performed on March 11, 1999 which was negative except for very non-specific early arthritic changes.
12. Thereafter, Dr. Raturi ordered an arthrogram of plaintiff's wrist which was performed on May 8, 1999 to determine whether she had any type of ligament injury or tear. The right wrist arthrogram was negative. Dr. Raturi placed restrictions on plaintiff of no frequent lifting of more than 25 pounds. According to Dr. Raturi's notes, plaintiff's restrictions were given primarily for elbow tendonitis. There is no medical evidence to causally relate plaintiff's right elbow tendonitis to the compensable fall. Plaintiff complained only of her right wrist after her fall according to the Surry Orthopedics' note. There is no medical evidence that this elbow problem is a result of plaintiff's compensable injury. In addition, plaintiff has not offered any expert medical evidence to show that the elbow condition is an occupational disease within the meaning of the Workers' Compensation Act.
13. Plaintiff received a 5% permanent partial disability rating to her right arm from Dr. Raturi due to problems with her elbow.
14. According to plaintiff's medical record of December 16, 1998, plaintiff alleged that she banged her right elbow on the table when she fell on March 27, 1998. No medical record prior to that contains any mention of such an injury, and plaintiff's report of injury to her elbow nine months after the accident is questionable. The original doctor's notes do not reflect any examination of plaintiff's right elbow, but only her left elbow which was abraised and bruised.
15. Plaintiff returned to the North Carolina/Virginia area and continued to work for Burger King in Winston-Salem, North Carolina.
16. On or about July 5, 2000, plaintiff sustained a second injury which was not described by plaintiff during her testimony at the hearing before the Deputy Commissioner.
17. On October 25, 2000, plaintiff returned to Dr. Koman. She did not describe to Dr. Koman any accident that occurred on July 5, 2000. On this visit, plaintiff reported that in the fall on March 27, 1998, not only did she bang her elbow on the table, she also banged it on the floor. This version of the events of March 27, 1998 is very questionable, as plaintiff never mentioned the right elbow injury prior to the October 25, 2000 visit with Dr. Koman. Plaintiff complained on this visit of swelling in her right upper extremity all the way to her shoulder. This was the first time plaintiff mentioned any right shoulder pain. On this visit, plaintiff complained that she had severe difficulty using small objects such as keys or pens and also could not open drawers. She also complained of difficulty holding a book, gripping a phone and doing household chores. Plaintiff also stated that holding a glass of water would cause mild discomfort in her hands. Plaintiff was diagnosed with cervical spine spondylosis and ulnar palsy right arm pain. Dr. Koman did not causally relate these problems to plaintiff's work injury of March 27, 1998. Plaintiff was referred for nerve conduction studies and also referred to a neurologist.
18. On December 6, 2000, plaintiff was taken out of work pending Dr. Koman's completion of additional testing. Plaintiff had nerve conduction studies performed on December 21, 2000 which were negative.
19. Dr. Koman's December 6, 2000 visit specifically indicated that he took plaintiff out of work until he was able to make a definite diagnosis. In this note, Dr. Koman specifically referenced the fact that there was an uncertainty concerning the workers' compensation coverage due to his findings. At no time in that report did Dr. Koman specify that plaintiff's current problems were a result of her work injury.
20. Plaintiff returned to see Dr. Koman on January 3, 2001 and continued to complain of upper extremity pain. She stated that she had difficulty gripping items such as phones and holding books. Plaintiff's exam by Dr. Koman on this occasion was essentially normal. Dr. Koman diagnosed chronic right upper extremity pain with intermittent swelling without electrodiagnostic evidence of mononeuropathy or cervical spondylosis and with normal remote arthrogram of the wrist. Dr. Koman did not indicate that plaintiff's right upper extremity diagnosis was the result of any incident that occurred at Burger King. Dr. Koman recommended a functional capacity evaluation.
21. Defendants offered evidence at the Deputy Commissioner hearing that was produced from surveillance of plaintiff in January of 2001 demonstrating plaintiff holding objects in her right hand and using her right hand without any observed difficulty. Plaintiff's complaints that she has difficulty holding items such as phones and books is contrary to the videotape in which plaintiff is seen holding and carrying several objects in her right hand without difficulty.
22. On or about January 18, 2001, plaintiff underwent a physical capacity evaluation. Plaintiff was placed in the light physical capacity demand level. However, the physical therapist noted that the majority of women who are plaintiff's age and gender fall within the light physical demand category. The light physical demand category is normal for women in the approximate same age group as plaintiff.
23. According to the functional capacity evaluation, plaintiff exaggerated her symptoms to a minimal degree and exhibited poor effort. Accordingly, this is the minimal functioning level one would expect plaintiff to be able to perform. Plaintiff's strength testing in her hands and upper extremities demonstrated that plaintiff's right arm was actually stronger than her left arm. This finding is unusual since plaintiff is left hand dominant and she would be expected to have greater strength in her dominant hand.
24. Plaintiff was released to return to work by Dr. Koman in a light duty capacity. Dr. Koman recommended that plaintiff be retrained and seek vocational rehabilitation but made that recommendation based upon plaintiff's problems working with her current employer. Dr. Koman noted that the plaintiff could work light duty.
25. Plaintiff met with her District Manager Raphael Jauregui and Human Resources Specialist Constance Welch to discuss her return to work on March 30, 2001. Plaintiff's work restrictions were reviewed as well as her job duties. It was agreed by all present that plaintiff could perform the job of Senior Assistant Manager and plaintiff returned to that position. No issue was raised by plaintiff in this case that the job was not suitable or that it exceeded her restrictions.
26. Plaintiff returned to work for the employer on March 30, 2001 in her normal job as Senior Assistant Manager and successfully performed her job duties.
27. On March 30, 2001, the day that plaintiff returned to work, plaintiff alleges that a co-employee hit her arm with an icemaker door. Plaintiff indicated that she did not initially have pain as a result of that incident but did begin having pain a few days later.
28. Both Raphael Jauregui and Constance Welch discussed the incident with plaintiff and were told by plaintiff that the incident did not result in any new injury to plaintiff and that plaintiff did not wish to seek medical treatment because of that alleged incident. Plaintiff was given a drug test at Prime Care but while there did not seek treatment for this injury.
29. As a result of the investigation of Raphael Jauregui and Kemper Claims Adjuster Mollie Murphy, the incident of March 30, 2001 involving the plaintiff was denied on the grounds that the coworker who was using the icemaker observed plaintiff intentionally place her arm in a position to have it struck by the icemaker door when the coworker closed it. The coworker did not testify at the hearing before the Deputy Commissioner.
30. Plaintiff continued to work for Burger King on Saturday, March 31, 2001 and Sunday, April 1, 2001. Thereafter, plaintiff received a call from Joy Meece advising that the March 30, 2001 incident would not be accepted as compensable.
31. Plaintiff went to Northern Surry Hospital on or about April 4, 2001 to receive treatment and was diagnosed with a sprain. The medical evidence does not causally relate the sprain to any incident on March 30, 2001. Plaintiff was given a work note to return to work full duty.
32. The greater weight of the evidence fails to show that plaintiff sustained any injury or disability as the result of the incident on March 30, 2001.
33. Plaintiff did not return to work after her treatment at Northern Surry Hospital and did not call or communicate with her employer until April 13, 2001. As a result of the employer's policy concerning absenteeism, plaintiff was terminated for failure to contact the employer concerning her job status and failure to report to work as scheduled. Plaintiff's termination was not a result of or in any way related to her work injury.
34. A Form 28T was filed by Mollie Murphy, the workers' compensation adjuster handling this file with Kemper Insurance Company, after plaintiff returned to work on March 30, 2001. No Form 28U was filed by plaintiff. Plaintiff acknowledged that she had received several Form 28U's from the Commission but stated that she had been unable to get a doctor to sign the Form 28U removing her from work. Plaintiff has applied for some limited positions since her termination from Burger King but temporarily resided in Florida for a six-week period and then returned to Virginia thereafter. Other than applying for approximately three jobs, plaintiff has not looked for work. Although plaintiff has worked for temporary agencies in the past, she has not signed up with any temporary agencies in North Carolina/Virginia. Her main efforts to obtain employment were in Florida where she resided for six weeks to assist her sister.
35. Plaintiff last saw Dr. Koman on January 24, 2001. Dr. Koman diagnosed chronic right upper extremity pain with intermittent swelling without diagnostic evidence of mononeuropathy or cervical spondylosis and with normal remote arthrogram of the right wrist noting also that the pain was not RSD and also diagnosing possible neuritis of the right upper extremity. Dr. Koman assigned a 10% permanent partial disability rating of the right arm. Dr. Koman did not indicate that plaintiff's current problem was the result of the compensable injury that she sustained to her wrist in March 27, 1998, three years prior to this diagnosis. Plaintiff's original injury had resulted only in a sprain as evidenced by the medical records. Plaintiff was also referred to Dr. Curl for treatment of her knee complaints. Any current knee complaints plaintiff has are not a result of the work injury in light of plaintiff's report to the doctor that her knee had become asymptomatic after the fall and her failure to report any ongoing knee problems to the doctor.
36. The disability ratings of 5% by Dr. Raturi and 10% by Dr. Koman assigned to plaintiff's right upper extremity are not causally related to plaintiff's work-related injury of March 27, 1998.
37. Dr. Raturi and Dr. Koman described plaintiff's upper extremity condition as a disease rather than as a reinjury. Plaintiff has failed to offer any medical evidence of a compensable occupational disease to satisfy the requirements of N.C. Gen. Stat. § 97-53.
38. Although defendants paid disability benefits from the time Dr. Koman took plaintiff out of work until plaintiff returned to work on March 30, 2001, defendants did so in order for Dr. Koman to complete testing so as to make a determination as to the cause of plaintiff's problems. Dr. Koman did not causally relate plaintiff's problems to the work injury sustained by plaintiff on March 27, 1998 or July 5, 2000. To the contrary, plaintiff's current problems are associated with her upper extremity rather than the right wrist sprain originally diagnosed as arising from the March 27, 1998 incident. Furthermore, the videotape documents that plaintiff's complaints about her upper extremity pain upon which the diagnosis is based are not credible in light of plaintiff's use of her right arm.
39. Plaintiff also has complaints of neck problems. There is no medical evidence to substantiate that any neck condition arose from either the March 27, 1998 or July 5, 2000 work injury. Plaintiff admitted that no doctor had told her that her neck injury was related to her work.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident involving her right wrist on March 27, 1998. Plaintiff was not out of work for any condition resulting from that injury until December 6, 2000 at which time Dr. Koman took plaintiff out of work to assess and diagnose the problems related to her right upper extremity. Plaintiff's accident in this claim was not accepted on a Form 21 and therefore no presumption of disability arises in favor of plaintiff. Plaintiff retains the burden of proof with respect to her disability. Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277 (2001). There is no medical opinion that plaintiff's right arm problems are related to the March 27, 1998 injury by accident and, in fact, her complaints involved a different part of plaintiff's arm that was not originally reported as being injured in the initial injury. Accordingly, plaintiff suffered a compensable injury to her right wrist only. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has no disease and no disability related to causes and conditions which are characteristic of and peculiar to plaintiff's employment with defendant-employer and therefore has not sustained a compensable occupational disease. N.C. Gen. Stat. § 97-53(13).
3. Plaintiff has the burden of proof to show that her injuries are a result of a work-related accident. Henry v. A.C. Lawrence Leather Co.,231 N.C. 477, 57 S.E.2d 760 (1950); Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277 (2001). In this case, plaintiff offered no evidence, medical or otherwise, to support her contentions that her various current complaints are a result of her work-related injuries of March 27, 1998 or July 5, 2000. Plaintiff has not satisfied her burden of proof. Plaintiff's chronic right upper extremity pain, neck or knee problems are not causally related to any work injury sustained by plaintiff.
4. Plaintiff returned to her position at Burger King on March 30, 2001 and was terminated thereafter for reasons unrelated to her injury. Plaintiff did not raise as an issue the suitability of that employment and the only evidence offered was that plaintiff and the employer agreed that the position was within her restrictions. Plaintiff did not testify that she believed the job to be outside of her restrictions. The job at Burger King was suitable employment. Plaintiff did not offer any medical evidence that any work injury caused her disability. Plaintiff's termination from Burger King was not related to her work injury and plaintiff is therefore not entitled to ongoing disability benefits.Arrington v. Texfi Industries, 123 N.C. App. 476, 473 S.E.2d 403 (1996);Demery v. Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001).
5. Because Burger King had a job for plaintiff within her restrictions and at her pre-injury wage which plaintiff abandoned, plaintiff cannot show loss of earning capacity and, therefore, is not entitled to retraining. N.C. Gen. Stat. § 97-32; Arrington v. Texfi Industries,123 N.C. App. 476, 473 S.E.2d 403 (1996).
6. Plaintiff has been provided competent medical treatment for her work injuries and is not entitled to additional medical treatment for her neck or knees or any condition involving her upper extremity, including neuritis and chronic pain, on the grounds that she has not proven them to be a result of her work-related injury. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for additional benefits under the Workers' Compensation Act must be and is hereby DENIED.
2. Each party shall bear its own costs.
This the ___ day of July 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER